Frank A. Herman and Florence C. Herman v. Commissioner.
Herman v. Commissioner
Docket No. 65861.
United States Tax Court
T.C. Memo 1959-129; 1959 Tax Ct. Memo LEXIS 119; 18 T.C.M. (CCH) 569; T.C.M. (RIA) 59129; June 24, 1959
*119 In 1946 the petitioner purchased a plant from his corporate employer. A formal document was drawn and recorded in which petitioner obligated himself to pay the full purchase price in annual installments, plus interest. Petitioner, who was on an accrual method of accounting, took interest deductions in his income tax returns each year until the date the property was sold by him in 1953 under threat of condemnation. Upon the sale the total amount of interest, which had not theretofore been paid, was withheld from the proceeds of sale and paid to the mortgagee. Held, that an oral understanding between the petitioner and the president of the corporation, which understanding was had prior to the formal document of purchase by the petitioner in 1946, did not have the effect of postponing the accrual of interest, that the interest was properly accrued and deducted in each of the prior years, and that the petitioner is not entitled to deduct such interest when paid in 1953. Thomas H. Kingsmill, Jr., Esq., 713 American Bank Building, New Orleans, La., for the petitioners. J. C. Linge, Esq., for the respondent. ATKINS
Memorandum Findings of Fact and Opinion ATKINS, Judge: The respondent determined a deficiency of $44,922 in the petitioners' income tax for the year 1953. This was based upon the disallowance of a claimed net operating loss carryover deduction and an increase in the reported capital gain upon the sale of certain property. A number of issues were raised by the petition, but all of them were abandoned either at the hearing or on brief, except the issue as to whether the petitioners are entitled to a deduction of $28,463.32 for 1953 on account of interest paid in that year, although deductions therefor were taken on an accrual method in petitioners' *121 returns for prior years. Findings of Fact Some of the facts were stipulated and the stipulation is incorporated herein by this reference. The petitioners, Frank A. Herman and Florence C. Herman, are husband and wife residing in the Parish of Jefferson, Louisiana. Florence C. Herman is a petitioner here only by reason of having filed a joint income tax return with her husband, and Frank A. Herman will be hereinafter referred to as the petitioner. Petitioners' joint income tax return for the year 1953 was filed with the district director of internal revenue at New Orleans, Louisiana. Petitioners used an accrual method of accounting and their returns were prepared and filed accordingly. The petitioner is a graduate of the University of Illinois, at which school he took some accounting courses. After graduation in 1923 he went to work for a public utility company (Central Illinois Public Service) and by 1940 he was manager of the ice department of such company, which department supervised 28 plants. On September 1, 1940, petitioner went to work for Louisiana Ice Service, Inc. That company at one time owned eight ice plants, six of which were in New Orleans. It was petitioner's *122 duty to manage the plants. On dates not disclosed these plants were sold off, one by one, until in 1946 only the central plant was left. In 1946 W. J. Small was president of Louisiana Ice Service, Inc. and petitioner was vice president, general manager and a director. Small and his wife owned approximately 85 per cent of the capital stock of the company (Small 2/3, wife 1/3). The remaining 15 per cent of the stock was owned in small amounts by approximately 75 to 100 employees of the company. Petitioner did not own any of such stock. For several months the petitioner, acting on behalf of the company, unsuccessfully tried to sell the remaining plant for $150,000. As a result of negotiations between petitioner and Small, the petitioner entered into a written contract with Louisiana Ice Service, Inc. for the purchase of certain real property together with all buildings, machinery and equipment, furniture and supplies, and automobiles, all of which apparently constituted the ice plant, for $150,000. Each of the contracting parties was separately represented by counsel, and a written instrument dated August 31, 1946, generally known in Louisiana as an "Act of Sale" and entitled "CREDIT *123 SALE OF PROPERTY BY LOUISIANA ICE SERVICE, INC. TO FRANK HERMAN," was entered into. This was signed by the petitioner and by the corporation by LeRoy Bradfield, vice president. The agreement described the property, stated a sale price of $150,000, acknowledged payment of $10,000, and provided for payment of the balance in installments, the petitioner giving 10 promissory notes, each in the amount of $14,000 and each bearing interest at four per cent per annum until paid. Each note had a stated due date, beginning with the first note due on August 31, 1947, and one additional note falling due each August 31 thereafter until August 31, 1956. The agreement further provided that interest should be paid annually; that the petitioner might make advance payments on account of principal, in which event interest on the principal so paid should stop immediately; that a special mortgage and vendor's lien was retained and granted to the vendor and all future holders of the notes in order to secure the full and punctual payment of the notes at maturity, together with all interest; that the purchaser should not sell or in any way encumber the property; and that in the event the notes were not *124 paid punctually at their maturity, the vendor or any holder of the notes might seize the transferred property and sell it to the highest bidder. The agreement was duly registered in the Conveyance Office in New Orleans, Louisiana, and has never been revised. No "verbal understanding" pertaining to this transaction was ever reflected in the minute books of the corporation. Also on August 31, 1946, the petitioner executed a second mortgage on the property to another ice company, owned by Small, in the amount of $40,000, to secure a loan from that company to him. The petitioner in that connection gave promissory notes totaling $40,000. At some time after the sale Louisiana Ice Service, Inc. was liquidated and the assets were transferred to W. J. Small Company, which company was in turn liquidated in 1951, with the result that W. J. Small became the owner of the notes which the petitioner had executed in 1946 upon the purchase of the plant. At some time after the petitioner acquired the above property, the Government of the United States sought to acquire a portion thereof for a new post office. The parties disagreed upon the price, but the matter was settled and the petitioner *125 was awarded $30,000 by an order of the United States District Court for the Eastern District of Louisiana on December 29, 1952. A gain on this sale was reported as long-term capital gain in the petitioners' 1952 income tax return. On February 11, 1953, under threat of condemnation proceedings by the City of New Orleans, the petitioners sold the remainder of the real estate consisting of the land and the ice plant to the City of New Orleans for $300,000. At the time of such sale the outstanding unpaid principal indebtedness thereon was $136,000 (the petitioner having paid $4,000 on principal about 1947). This amount of $136,000 was withheld from the sale proceeds and paid to the mortgage holder. The sum of $28,463.32, representing interest accumulated since the petitioner's acquisition of the property on August 31, 1946, was also deducted from the sale proceeds and paid to the mortgage holder on February 11, 1953. This total amount of interest had been taken as deductions in the petitioners' income tax returns over the years since acquisition, under its accrual method of accounting. The petitioners did not claim an interest deduction in the amount of $28,463.32 in their 1953 return, *126 which was signed by them. In a schedule attached to the return for that year the petitioners did deduct as a part of overhead expense in connection with the ice plant operations an amount of $609.58 denominated "Interest." About August 1955, a revenue agent examined the return for 1953, but at no time during the examination or at an informal conference held in September or October 1955, did the petitioner or any of his representatives discuss the matter of the allowance of this amount as a deduction for 1953. In a letter dated February 15, 1956, directed to the district director of internal revenue by the petitioners and signed by them, protesting the revenue agent's report, examination, and proposed deficiency for 1953, no claim for a deduction of this amount was made. The petitioner knew the difference between cash and accrual accounting. After taking over the operation of the business in 1946, he never employed an outside auditor to audit the books and prepare the tax returns. At all times the business employed a bookkeeper. The petitioner assumed the books were properly kept and had no reason to believe otherwise. The petitioner did not keep the books or prepare his own income *127 tax returns. The income tax returns filed by the petitioners for the years 1947 to 1952 disclosed operating profits from the ice plant for the years 1947 and 1948 and operating losses therefrom for the years 1949 to 1952. They show total gains from sale of assets of the plant over those years of $28,620.29. Such returns also show that the petitioners over those years took depreciation deductions on account of the plant aggregating $61,887.21, as well as interest deductions totaling $35,594.71. In their petition the petitioners allege that the respondent erred in not allowing them a deduction of $28,463.32, representing interest paid during the year 1953. In his answer the respondent denied having committed error. Opinion Although the petitioners throughout the years that the notes were outstanding deducted interest thereon aggregating $28,463.32 in accordance with their accrual method of computing net income, [1] they now maintain that they are entitled to deduct that sum in 1953 when it was actually paid out of the proceeds of the sale of the property. *128 The parties are not fundamentally in disagreement as to the legal principles involved. In the case of a taxpayer reporting income upon an accrual method, items of expense are considered as incurred and therefore deductible in the year when the taxpayer's liability to pay becomes fixed, whether or not it is presently paid or payable; if the liability to pay is wholly contingent upon the happening of a subsequent event such liability is not incurred and the item is not deductible until the year in which the event occurs; ordinarily interest accrues from day to day (even though payment may be deferred) unless the obligation to pay at all is contingent upon the happening of a later event. See Natco Corporation v. United States (C.A. 3), 240 Fed. (2d) 398, affirming a decision of a District Court. See also Guardian Investment Corp. v. Phinney (C.A. 5), 253 Fed. (2d) 326, affirming a District Court decision. In Edward L. Cohen, 21 T.C. 855, we stated: "The rule which emerges from the decisions of this Court is that deductions for accrued interest are proper where it can not be "categorically said at the time these deductions were claimed that the *129 interest would not be paid, even though the course of conduct of the parties indicated that the likelihood of payment of any part of the disallowed portion was extremely doubtful." D. J. Jorden, 11 T.C. 914, 925. * * *" There can be no question that the formal agreement which the petitioner entered into with Louisiana Ice Service, Inc. and the notes executed pursuant thereto provide that a liability for interest should arise each year. However, the petitioners contend that there must be taken into consideration an oral understanding between the petitioner and Small, president and principal stockholder of the corporation from which the petitioner bought the ice plant in 1946, which was had shortly before execution of the formal contract. The petitioners cite Combs Lumber Co., 41 B.T.A. 339, in which we held that we are not rigidly bound by formal written documents in determining questions in the field of taxation, since it is the substance and the realities of the transaction that must govern. On brief the petitioners argue that the substance of the oral agreement between the petitioner and Small was that the interest was payable only if the venture was *130 successful and the principal fully repaid. It is argued, therefore, that the liability to pay interest was dependent upon a contingency, namely, the success of the venture and the prior repayment of the principal. They point out that the balance of the principal, $136,000, was not paid until 1953 when the petitioner sold the plant and that at that time the contingent liability to pay interest first became absolute. Both the petitioner and Small testified with regard to the oral understanding which was had about two weeks prior to the execution of the formal agreement. Both testified that while there was some doubt as to whether the petitioner could successfully operate the property, they thought that it could be done. Both testified that if the project proved to be successful the petitioner would be expected to pay interest, but that if it were not successful the petitioner could turn the property back with no further loss than any amount which he had paid on the principal, and that petitioner would then not be required to pay interest. The petitioner testified that it was his understanding that the operation would not be considered successful until the entire remaining principal *131 of $140,000 was paid. Small was not so definite in this respect. He stated that the project would have been considered successful if the petitioner had been able to make earnings sufficient to pay the entire amount of principal and interest. He further stated that whether interest should be paid depended largely upon the conditions of the petitioner's business and that he, Small, would have been the one to make the decision as to whether to ask the petitioner to pay interest. Small further testified that no demand was made for interest or principal throughout the years since the business had limited funds and it would have been a poor business policy to demand interest if it would have impaired the business, since it was not desired to take the property back. Despite the oral understanding between Small and the petitioner, the fact remains that the petitioner and the corporation did thereafter enter into the written agreement which provided for a yearly liability for interest, and notes were executed accordingly. Both contracting parties were represented by counsel. Taking all the circumstances into consideration, we are not satisfied that the parties intended that the liability *132 for interest should arise only in the event all the principal was paid. Rather, it would seem that the parties recognized a current and continuing liability to pay interest and that any oral understanding had merely to do with the time of payment. See Keebey's Inc. v. Paschal (C.A. 8), 188 Fed. (2d) 113, affirming a District Court decision. See also Umpqua Timber Co., 27 B.T.A. 135. The effect of the oral understanding appears to have been that Small would be considerate in the matter of enforcing the legal right to demand actual payment of interest, and that the decision was always to be his as to whether to enforce the formal agreement. It could not be said categorically during the intervening years that the interest would not be paid even though there might have been some question as to the petitioner's ability to pay. Based upon the whole record, we cannot conclude that the interest was improperly accrued and deducted in the prior years. We consider it significant that through the years the petitioner evidently thought he had a continuing obligation to pay interest since he did accrue the interest as deductions on his returns. See Natco Corporation v. United States, supra. *133 It was not until the petition was filed in this case in 1957 that a contention was made that the interest was erroneously deducted in the prior years and that it should have been deducted in 1953. Prior thereto in all discussions with the Internal Revenue Service no question was raised as to the deductibility of this item in 1953. The petitioners have cited certain cases as supporting their contention. Combs Lumber Co., supra; Concord Electric Co., 7 B.T.A. 1027; Pierce Estates v. Commissioner (C.A. 3), 195 Fed. (2d) 475. However, none of those cases is in point here. The decisions turned either upon a finding that there was no intention to charge interest, or that interest should not become a liability until a date certain or upon the happening of a condition precedent. Each case must be decided upon its particular facts and circumstances. Upon this record, as stated, we are not satisfied that the agreement between the parties was at variance with the formal agreement of August 31, 1946. In addition, it may be noted that there is considerable doubt that any oral agreement entered into between the petitioner and the president of the corporation *134 which sold the property to the petitioner could have the effect of contravening the terms of the later formal agreement, particularly since there was a large number of individuals comprising a minority stockholding interest in the corporation, and where there was no notation on any corporate records of any qualifying oral agreement. It is our conclusion that the interest in the amount of $28,089.79 did not accrue as a liability in 1953 and that it is not deductible from income for that year. Since the notes and the interest were not paid until the date of sale of the property, which was on February 11, 1953, some interest was properly accruable for the year 1953 up to February 11. However, we note that the petitioners in their return for 1953 did deduct an amount of $609.58 as interest in connection with ice operations, and the record does not establish that they are entitled to deduct any greater amount for 1953. As previously indicated, the petitioners, in their petition, raised three other issues. One of them, relating to the alleged reinvestment of proceeds of an involuntary conversion of property, was specifically abandoned by the petitioners at the hearing. The other issues, *135 one relating to the amount of gain on the sale of property and the other to a deduction for a net operating loss, were not mentioned by the petitioners on brief as being in issue and no findings of fact with respect thereto were requested. Rather, in such briefs only one issue, the one discussed hereinabove, was mentioned. It appears, therefore, that the petitioners have abandoned such other two issues. In any event, the petitioners have failed to adduce proof to show that the respondent erred in those respects. Decision will be entered for the respondent. Footnotes
1. Section 23(b) of the Internal Revenue Code of 1939 provides that there shall be allowed as a deduction all interest "paid or accrued within the taxable year on indebtedness." Section 43 provides that the deductions shall be taken for the taxable year in which "paid or accrued" or "paid or incurred," dependent upon the method of accounting upon the basis of which the net income is computed. Section 48(c) provides that the terms "paid or incurred" and "paid or accrued" shall be construed according to the method of accounting upon the basis of which the net income is computed.↩